[File No. 6831]

WORKMEN'S COMPENSATION BUREAU, Unemployment Compensation Division, a Department of the State of North Dakota, Appellant, v. FARMERS STATE BANK OF LISBON, NORTH DAKOTA, a Corporation, and Jakob Wolters, Respondents.

(11 NW(2d) 97)

Opinion filed September 13, 1943

*W. Ray Reichert,* for appellant.

*Nelson & Herringer, Kvello & Adams,* for respondents.

BURR, J. The issue involved is determined by the construction to be placed on the term "employer" as defined in the North Dakota Unemployment Compensation law—chap. 232, Sess Laws of 1937, and as amended by chap. 215, Sess Laws 1939.

Under the provisions of § 3 of this chap. 232, "There is hereby established as a special fund separate and apart from all public moneys or funds of the State, an unemployment compensation fund, which shall be administered by the Bureau exclusively for the purpose of this Act. This fund shall consist of (1) all contributions collected under this Act, together with any interest thereon collected pursuant to Section 14 of this Act; (2) all fines and penalties collected pursuant to the provisions of this Act; (3) interest earned upon any moneys in the fund; (4) any property or securities acquired through the use of moneys belonging to the fund; and (5) all earnings of such property or securities. All moneys in the fund shall be mingled and undivided."

This remains unchanged by the Law of 1939. See § 3(a), chap. 215, Sess Laws 1939. Among these "contributions collected under this act" are the contributions based upon a percentage of the wages paid to employees and collected from the "employer," the statute providing: "(a) Payments. (1) On and after January 1, 1937, contributions shall accrue and become payable by each employer for each calendar year in which he is subject to this Act, with respect to wages payable for employment (as defined in § 2(h) occurring during such calendar year. Section 4, chap. 232, Sess Laws 1937." (Law of 1939 is the same.)

According to both statutes, the term "'employer' means: (§ 2(f)) "(1) Any employing unit which for some portion of a day in each

of twenty different weeks, whether or not such weeks are or were consecutive, within either the current or the preceding calendar year, has or had in employment eight or more individuals (irrespective of whether the same individuals are or were employed in each such day) ;

"(2) ...........

"(3) ...........

"(4) Any employing unit which together with one or more other employing units, is owned or controlled (by legally enforceable means or otherwise) directly or indirectly by the same interests, or which owns or controls one or more othe employing units (by legally enforceable means or otherwise), and which, if treated as a single unit with such other employing unit, or interests, or both, would be an employer under Paragraph (1) of this subsection."

" 'Employing unit' means any individual or type of organization, including any partnership, association, trust, estate, joint-stock company, insurance company, or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee or successor thereof, or the legal representative of a deceased person, which has or subsequent to January 1, 1936, had in its employ *eight* or more individuals performing services for it within this State. All individuals performing services within this State for any employing unit which maintains two or more separate establishments within this State shall be deemed to be employed by a single employing unit for all the purposes of this Act. Each individual employed to perform or to assist in performing the work of any agent or employee of an employing unit shall be deemed to be employed by such employing unit for all the purposes of this Act, whether such individual was hired or paid directly by such employing unit or by such agent or employee, provided the employing unit had actual or constructive knowledge of the work." Section 2(e), chap. 232, Sess Laws 1937.

Chapter 215 of the Sess Laws of 1939 amended this definition of "employing unit" in this particular: That an individual or type of organization is an employing unit if it "has or subsequent to January 1, 1936, had in its employ *one* or more individuals performing services for it within this State." Other than this change of the number of

employees from eight to one, there was no amendment of § 2(e) of chap. 232 of the Sess Laws of 1937 made in 1939.

The plaintiff claims that under the law there is due from the Farmers State Bank of Lisbon, a banking corporation organized under the laws of this state, a contribution of $122.85 with penalty and interest as and for the year 1937, a contribution of $208.17 with penalty and interest as and for the year 1938, and a contribution of $241.28 with penalty and interest as and for the year 1939.

The complaint does not allege, nor does the unemployment division of the bureau claim, that at any time during any of the years involved the Lisbon bank employed more than six individuals "for some portion of a day in each of twenty different weeks." Standing alone, therefore, the bank would not be an "employer" under the definition heretofore set forth. But the plaintiff claims that at the same time, and during the same period involved in this lawsuit, the Elk Valley State Bank of Larimore employed five individuals for some portion of a day in each of twenty different weeks and further that during the period involved the Citizens State Bank of New England "employed five individuals for some portion of a day in each of twenty different weeks."

In order to exact contributions from the Farmers State Bank the plaintiff sets forth that the capital stock of each of the three banks mentioned consisted of 250 shares and that "one Otto Bremer, of St. Paul, Minnesota, owned and controlled a majority thereof" in each bank.

It is therefore the contention of the plaintiff that because of this, the defendant bank became an "employer," as defined by subdiv (4) of § 2(f) of chap. 215 of the Sess Laws of 1939.

The complaint in intervention, filed by Jakob Wolters, states he is the owner of ten shares of stock in the defendant bank; holds no stock in either of the other two banks; but intervenes on behalf of himself and other minority stockholders of the bank all of whom are in the same position as himself with reference to the other banks.

We need not set forth all of the allegations of the answer, most of the facts having been stipulated by the parties. But the defendant bank alleges the statute is unconstitutional, and contravenes the provisions of §§ 13 and 16 of the constitution of this state, § 10 of the Constitution

of the United States, and article 5 and § 1 of article 14 of the amendments to the Constitution of the United States.

According to this stipulation of facts the three banks are separate and distinct corporations. Each bank is governed by its board of directors,—the Lisbon bank having five directors, the Larimore bank three directors, and the New England bank three directors. ". . . that the policy of operation and management of the defendant bank was wholly separate and distinct from that of the other banks above mentioned and in no way bound up or conditioned by or dependent upon the management of the said Elk Valley State Bank of Larimore, North Dakota, or Citizens State Bank of New England, North Dakota, and that the defendant bank was not in any manner a part or parcel of any other bank or system of banks or chain of banks."

No member of the board of directors of one bank serves as a director in any of the other banks. Otto Bremer owns 192 shares of stock in the Lisbon bank, 198 shares of the stock of the Larimore bank, and 156 shares of the stock of the New England bank. At no time involved was Otto Bremer a director of any of the banks and at all times, when the directors of a bank were elected, the stock owned by Otto Bremer was voted by proxy. It is admitted that if the defendant bank is held to be an "employer" as defined by statute, then it owes to the plaintiff the amounts claimed in the complaint.

The trial court found, in addition to the stipulation of facts, that none of the banks "have or carry on any interbank transactions and deal in any manner with one another nor was the management of said banks directed from a single source, and each of said banks operated wholly and solely as a separate entity; that the business of the defendant bank was had and done without any relationship to the business of the Elk Valley State Bank of Larimore, North Dakota, or the Citizens State Bank of New England, North Dakota, that the policy of operation and management of the defendant bank was wholly separate and distinct from that of the other banks above mentioned and in no way bound up or conditioned by or dependent upon the management of the Elk Valley State Bank of Larimore, North Dakota, or Citizens State Bank of New England, North Dakota, and that the defendant bank

was not in any manner a part or parcel of any other bank or system of banks or chain of banks."

The court concluded therefore that the defendant bank was "not an affiliate of an employing unit as defined by subdivision (e) and paragraph 4 of subdivision (f) of § 2 of chapter 232 of the Laws of North Dakota for 1937, as amended by chapter 215, Laws of North Dakota for 1939."

The court concluded further that this paragraph (4) of § 2 (f), chap. 232, Sess Laws of 1937, as amended by chap. 215, Sess Laws of 1939, was unconstitutional, as violative of the provisions of § 16 of the Constitution of North Dakota and of § 10, article 5 of the amendments, and § 1 of the Fourteenth Amendment of the Constitution of the United States.

The plaintiff appeals and specifies as error the holding of the court as to the unconstitutionality of this section involved, also the entering of judgment and the dismissal of the case and sets forth that it desires "a new trial of the entire case in the Supreme Court."

So far as this case is concerned, we need not consider that Otto Bremer did not attend the meetings of the stockholders for the election of directors, and that his stock was voted by proxy. We may proceed on the theory that the proxy or agent voted in accordance with the wishes and the plans of his principal.

We may also take judicial notice of the fact that the banks involved are situated in widely separated districts in the state; that Larimore is in the northern part of the state and approximately one hundred ten miles from Lisbon in the southern part of the state; and that New England is situated well toward the southwestern part of the state and about two hundred fifty miles from Lisbon and two hundred eighty miles from Larimore, by straight lines. As the findings set forth, we note these banks have no connection with each other in business transactions, relations, competition, or even management, except insofar as one man, shown to be a resident of the state of Minnesota, holds a controlling interest in each bank.

Though we do not shut our eyes to the fact that a man who holds the majority of stock in a bank has the power to control the selection of the directors, even though he votes his stock by proxy, neither do we shut

our eyes to the well-known fact that small banking institutions situated in widely separated sections of the state and not belonging to the same system of banks or chain of banks do not ordinarily have any relationship with each other so far as employment or business enterprise is concerned. All of this is clearly foreshadowed in the pleadings and in the findings. We refer to this in order that we may better understand the effect of the findings and stipulation of facts.

There is no dispute as to the accuracy of the findings of the trial court in setting forth the existing conditions of the three banks. The entire argument of appellant is centered on the question of the constitutionality of this chapter 232 of the Sess Laws of 1937 as amended, though the notice of appeal specifies "the plaintiff desires a new trial of the entire case." Thus, we accept the findings of the trial court which consist of the stipulated facts as supplemented by the findings heretofore set forth.

According to the appellant, the issue is boiled down to this: "Is the defendant an 'employing unit' within the purview of the act?" However, the question involved is not so much whether the defendant bank was or is an "employing unit" within the purview of the act, as whether the bank is an "employer" as defined by the statute, for the contributions are not levied upon an "employing unit." The contributions are exacted from the "employer." It is clear that if the answer is "No," then the question of the constitutionality of the act will not be determined.

The defendant bank was not an employing unit during the years 1937 and 1938. It did not employ eight or more individuals. Not being an employing unit, it was not an employer under the provisions of § 2 (f) 1 of the 1937 law. Not being an employing unit, it would not be included or considered under the provisions of § 2 (f) 4 of that law dealing with employer; and in addition, there is nothing to indicate the defendant bank maintained two or more separate establishments.

Though under the Law of 1939 the defendant bank was an employing unit, it was not such an employing unit as made it an emplc under the provisions of § 2(f) 1.

The appellant urges that the contribution may be exacted bec the provision of § 2 (f) 4, chap. 232, Sess Laws of 1937, ·

mains unamended by chap. 215 of the Sess Laws of 1939, and already quoted.

The findings expressly show the defendant bank is not owned directly or indirectly by any interest which owns and controls some other employing unit. Each bank is a separate corporation. The only basis shown for plaintiff's contention arises from the fact that Otto Bremer owns the majority of the stock in each bank. The findings clearly show this. There is no claim that the court erred in finding that the banks were not managed and directed from a single source, or in finding that thi… "bank was not in any manner a part or parcel of any other bank or system of banks."

The mere fact that one person is shown to be the owner of the majority of the stock in each of three separate banking corporations, including the defendant bank, does not constitute the defendant bank an employer as defined in § 2 (f) 4 of the act.

In Kellogg v. Murphy, 349 Mo 1165, 164 SW(2d) 285, the court, in dealing with the question of majority control of separate businesses, states: "The common major ownership or control of two or more separate businesses is not sufficient in itself to establish prima facie that such businesses are to be treated as a single 'employer' under the Unemployment Compensation Act, where there is evidence to the contrary relative to history, location and nature of the two businesses."

In the body of the opinion this court says: "We agree proof of major ownership, or control, of two separate businesses (corporate or otherwise) by the same employing unit sometimes would be sufficient to make an inference of unified control not unreasonable or arbitrary. Sometimes it would be wholly insufficient, depending on the proven history, location and nature of the two businesses. Hence we are unable to approve respondents' broad and unrestricted formula that any two or more businesses anywhere in the state are prima facie brought under the Unemployment Compensation Act by the sole fact of common major ownership or control, regardless of any evidence to the contrary."

As pointed out, the parties stipulate the three banks are separate and distinct corporations and no member of the board of directors in one bank serves as a director in any of the others. They do not belong to any system, and have no business in common.

The trial court was correct in concluding that the defendant bank, though an employing unit under chap. 215 of the Sess Laws of 1939, was not an employer under the provisions of § 2 (f) 4 of the act.

We need not consider the issues raised by the intervener. The defendant bank not being an "employer" as defined by statute, we need not determine the question of the constitutionality of the statute. There is no defendant here affected by the question of constitutionality and it is only where a person's rights are so affected do we pass upon the constitutionality of an act. See King v. Baker, 69 ND 581, 586, 288 NW 565, 568, 125 ALR 730, 733.

The judgment of the lower court is affirmed.

MORRIS, Ch. J., and CHRISTIANSON, BURKE, and NUESSLE, JJ., concur.